**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bruce Alan Woodward, | No. CV-20-00151-TUC-DCB |
| Plaintiff, | **ORDER** |
| v. | |
| United States Customs and Border Protection, et al., | |
| Defendants. | |

The Court denies the Plaintiff's Motion for Summary Judgment and grants the Defendant's Motion for Summary Judgment.

## Background

The Plaintiff proceeds pro se. He alleges that Defendants, Custom and Border Protection (CBP), arbitrarily and capriciously terminated his SENTRI (Secure Electronic Network for Travelers Rapid Inspection) Trusted Traveler program pass.

It is undisputed that in 2015, the Plaintiff obtained a SENTRI pass to cross the Mexico-United States border in an express travel lane. On September 7, 2019, the Plaintiff entered the express lane at the DeConcini Port of Entry, where CBP Officer Amy Rogers was stationed. She asked a few questions and then asked the Plaintiff to open his trunk. When Plaintiff turned off his car and started to get out of his car to open the trunk for her, she decided to, and did, refer him to the secondary inspection area. According to Agent Rogers, the Plaintiff's answers to her questions were argumentative and she felt threatened when he opened the door into her while she was standing within a confined area next to his

car. The Plaintiff submits that the car was not equipped with a mechanism to pop the trunk, and he had to get out to open it. Regardless of disputed facts, described by the Plaintiff as creating "he said, she said," issues, it is undisputed that Agent Rogers reported the referral to secondary to her Supervisory, Agent Steger.

In secondary, CBP Agent Steger "lifted," Plaintiff's pass, which served to temporarily revoke it, until Plaintiff could meet with someone in the SENTRI office for an ultimate determination regarding revocation. This occurred on September 30, 2019, when Plaintiff met with Supervisor Armendariz, who revoked the pass permanently. It is undisputed that the Plaintiff had had a prior incident in 2017 when he drove a vehicle through the SENTRI express lane that had a license plate different from his approved vehicle plate. The Defendants assert that in both instances, the Plaintiff was argumentative and/or aggressive with officers. Again, the Plaintiff contests the Defendants' description of him as being argumentative.

The Plaintiff complains that he was never given a specific explanation for the revocation of his SENTRI pass and was only given a boilerplate excuse of "does not meet the criteria for membership." (P MSJ (Doc. 28) at 2.)

There is no constitutionally protected right to a SENTRI pass. 8 C.F.R. § 235.7(c) (no private right of action, substantive or procedural). Federal courts are courts of limited jurisdiction and may only adjudicate those cases over which they have subject matter jurisdiction: basically, those cases involving diversity of citizenship or a federal question. *Kikkonen v. Guardian Life Ins. co. of America*, 511 U.S. 375 (1994). Where there is neither diversity nor a constitutional violation of an individual's rights, this Court has no jurisdiction.

Here, there is federal question jurisdiction over the controversy between Plaintiff and CBP under the Administrative Procedures Act (APA), which grants this Court review over agency actions, which may be set aside if they are arbitrary and capricious. 5 U.S.C. § 706(2)(A). Agency action is not, however, subject to review if it is an action committed to agency discretion by law. 5 U.S.C. § 701(a)(2). An agency decision is committed to

agency discretion by law when the relevant statute "is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney,* 470 U.S. 821, 830 (1985). The logic for excluding discretionary actions from judicial review is because when there are no judicially manageable standards available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action for an abuse of discretion. *Id.*

The Plaintiff submits: "The question before the court is fundamentally simple: was the 2019 action of revoking the Plaintiff's membership in the SENTRI program arbitrary and Capricious?" He submits evidence of arbitrariness and capriciousness as follows: the termination was based on a boilerplate explanation and failed to identify any specific reason for the revocation, including the questionable after-the-fact excuses now offered by the Defendant that he was argumentative and refused to open the trunk. Both are arbitrary and capricious reasons for revocation because he was not argumentative and his car is manufactured so that the trunk cannot be popped from inside the car and must be opened without using the key. Agent Steger decided to "lift" the pass even before talking to him in secondary, and Agent Armendariz did the same, telling him the revocation was permanent before they discussed the matter. Finally, the Plaintiff argues that the Defendant's revocation argument is essentially "because I said so" and "because we can," which is an abuse of discretion because there is no relationship between the revocation and the PORTPASS program. The question before the Court is not so simply answered. First, the Court must determine that the revocation decision is the type of agency action that is subject to judicial review under the APA. Because the Court finds that it is not, the Court does not reach the merits of Plaintiff's arbitrary and capricious arguments.

**Administrative Procedures Act (APA)**

The APA establishes a "basic presumption of judicial review [for] one 'suffering legal wrong because of agency action.'" *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1905 (2020) ((quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140 (1967) (quoting § 702)). Therefore, the exception of discretionary actions

from judicial review is applied "quite narrowly." *Id.* The discretion granted to the agency must be complete and unfettered, *ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1069 (9th Cir. 2015), and "such a situation only occurs in 'rare instances.'" *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 688(9th Cir. 2003) (quoting *Heckle*r, 470 U.S. at 830). "Even where statutory language grants an agency 'unfettered discretion,' [the agency's] decision may nonetheless be reviewed if regulations or agency practice provide a 'meaningful standard by which th[e] court may review its exercise of discretion.'" *Id*. at 688 (quoting *Socop–Gonzalez v. INS*, 208 F.3d 838, 844 (9th Cir.2000)). Therefore, there is jurisdiction to review allegations that an agency has abused its discretion by exceeding its legal authority or by failing to comply with its own regulations. *Abdelhamid v. Ilchert*, 774 F.2d 1447, 1450 (9th Cir.1985).

The relevant statute is 8 U.S.C. 1365b(k), which instructs the Department of Homeland Security (DHS) to "establish an international registered traveler program" designed to "expedite the screening and processing of international travelers" participating in the program to "ensure that the international registered traveler program includes as many participants as practicably by (i) establishing a reasonable cost of enrollment; (ii) making program enrollment convenient and easily accessible; and (iii) providing applicants with clear and consistent eligibility guidelines." 8 U.S.C. 1365b(k)(3)(E ).[1]

---

[1]"The Secretary of Homeland Security shall establish rules, guidelines, policies, and operating and auditing procedures for collecting, removing, and updating data maintained in, and adding information to, the entry and exit data system that ensure the accuracy and integrity of the data." 8 U.S.C. 1365b(f)(1)(A). The only requirements declared by Congress are: "The rules, guidelines, policies, and procedures established under this subsection shall—(A) incorporate a simple and timely method for--(i) correcting errors in a timely and effective manner; (ii) determining which government officer provided data so that the accuracy of the data can be ascertained; and (iii) clarifying information known to cause false hits or misidentification errors; (B) include procedures for individuals to--(i) seek corrections of data contained in the databases or data systems; and (ii) appeal decisions concerning data contained in the databases or data systems; (C) strictly limit the agency personnel authorized to enter data into the system; (D) identify classes of information to be designated as temporary or permanent entries, with corresponding expiration dates for temporary entries; and (E) identify classes of prejudicial information requiring additional authority of supervisory personnel before entry.

8 U.S.C. 1365(b(f)(4).

Additionally, there shall be a clearinghouse bureau in DHS to centralize and streamline (5) Centralizing and streamlining correction process the process through which

The statute "indicates that Congress committed to the [agency] the sole discretion to determine eligibility guidelines and evaluate applicants." *Roberts v. Napolitano*, 792 F.Supp 2d 67, 73-74 (D.D.C 2011). The only other court to consider the question of judicial review for agency decisions made under 8 U.S.C. 1365b(k) besides *Roberts* was in the 10th Circuit. In *McLean v. Morgan,* 2020 WL 5094683 (Kans. Aug. 28, 2020), the district court found the regulations, 8 C.F.R. 235.12, for the Global Entry program set forth eligibility guidelines sufficient for the Court to review an agency decision denying the plaintiff's application. The relevant regulations, here, are 8 C.F.R. § 235.7 for SENTRI, a PORTPASS program.

The PORTPASS program is a system designed for certain ports-of-entry, which have been identified and designated by the DHS as providing access to the United States for "a group of identified, low-risk, border crossers." 8 C.F.R. § 235.7(a)(1)(i). In large part it provides an entry program for such aliens, and United States citizens. *Id.*

The DHS eligibility rules relevant to the Plaintiff, who is a United States citizen, require citizenship, 8 C.F.R. § 235.7(a)(3), and "[c]riteria which will be considered in the decision to approve or deny the application, including the following: admissibility to the United States and documentation so evidencing, criminal history and/or evidence of criminality, purpose of travel, employment, residency, prior immigration history,

---

members of the public can seek corrections to erroneous or inaccurate information contained in agency databases, which is related to immigration status, or which otherwise impedes lawful admission to the United States. 8 U.S.C. 1365b(g)(A).

The statute provides entry-exit system goals as follows: "The Department of Homeland Security shall operate the biometric entry and exit system so that it-- (1) serves as a vital counterterrorism tool; (2) screens travelers efficiently and in a welcoming manner; (3) provides inspectors and related personnel with adequate real-time information; (4) ensures flexibility of training and security protocols to most effectively comply with security mandates; (5) integrates relevant databases and plans for database modifications to address volume increase and database usage; and (6) improves database search capacities by utilizing language algorithms to detect alternate names." 8 U.S.C. 1365b(h).

In implementing subsections g and h, DHS specialists and front-line personnel shall--"(1) develop cross-training programs that focus on the scope and procedures of the entry and exit data system; (2) provide extensive community outreach and education on the entry and exit data system's procedures; (3) provide clear and consistent eligibility guidelines for applicants in low-risk traveler programs; and (4) establish ongoing training modules on immigration law to improve adjudications at our ports of entry, consulates, and embassies." 8 U.S.C.A. § 1365b(i).

possession of current driver's license, vehicle insurance and registration, and vehicle inspection," 8 C.F.R. § 235.7(a)(4)(x). Eligibility also depends on payment of a fee, *id.* at (v), and is vehicle specific. i*d.* at (viii).

"*An application may be denied in the discretion of the district director having jurisdiction over the POE where the applicant requests access*. Notice of such denial shall be given to the applicant. *There is no appeal from the denial*, but denial is without prejudice to reapplying for this or any other Service benefit. Re-applications, or applications following revocation of permission to use the lane, will not be considered by the Service until 90 days have passed following the date of denial or revocation." 8 C.F.R. § 235.7(a)(4)(x).

"*The number of persons and vehicles which can use a DCL [Dedicated Commuter Lane] is limited numerically by the technology of the station. For this reason, distribution of applications at each POE [Port of Entry] may be limited.*" 8 C.F.R. § 235.7(a)(4)(iii).

"By applying for and participating in the PORTPASS program, each approved participant acknowledges and agrees to all of the following:" (i) use of the vehicle approved for use in the PORTPASS program; payment of a system-cost fee; that each occupant of a vehicle applying for entry has current approval for entry through PORTPASS; he or she possesses authorization documents; "*that a participant must positively identify himself or herself in the manner prescribed by the Service at the time of each application for entry via the PORTPASS;* each use of PORTPASS constitutes separate application for entry; to be responsible for the contents of the vehicle; to not import or transport controlled or restricted items; to abide by all Federal, state and local laws for importation of alcohol or agricultural products; "*to be subject to random checks or inspections that may be conducted by the Service at any time and at any location, to ensure compliance";* to have a current vehicle registration; to notify the Service if an approved vehicle is sold, stolen, or otherwise disposed of, and to use only the approved POE and otherwise to present themselves for inspection or examination. 8 C.F.R. § 235.7(a)(5)(i)-(xiii).

"A PORTPASS program participant who violates any condition of the PORTPASS program, . . . a law or regulation of the United States Custom Service or law or regulation or other Federal Inspection Service *or who is otherwise determined by an immigration officer to be ineligible to participate in PORTPASS*, may have the PORTPASS access revoked *at the discretion of the district director or the chief patrol agent* and may be subject to other applicable sanctions, . . . ." 8 C.F.R. § 235.7(b).

As for judicial review, the regulation expressly states: "*Nothing in this section is intended to create any right or benefit, substantive or procedural, enforceable in law or equity by a party against* the Department of Justice, *the Immigration and Naturalization Service, their officers* or employees of the Department of Justice." 8 C.F.R. §235.7(c).

Not only do the regulations clearly establish that there is no private right of action against the CBP, they are clear that in determining eligibility, including revoking it, the matter is solely up to the discretion of the Service. The only "meaningful standards for review contained in the regulation apply to the guidelines DHS was charged with developing, not the evaluation of applicants for PORTPASS access. This is an important distinction because the eligibility/revocation decision challenged by the Plaintiff is that the Plaintiff may no longer use the Dedicated Commuter Lane (DCL), the express-lane, when crossing the Mexico-United States border at the DeConcini Port of Entry.

Importantly, the APA's "basic presumption of judicial review [protects] one 'suffering legal wrong because of agency action.'" *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. at 1905 ((quoting *Abbott Laboratories*, 387 U.S. at 140 (quoting § 702)). This presumption only applies to final agency actions. 5 U.S.C. § 704. For an agency action to be considered "final," it must (i) "mark the 'consummation' of the agency's decisionmaking process ... [and] not be of a merely tentative or interlocutory nature," and (ii) be an action "by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (holding that a biological opinion constituted final agency action).

Here, it is undisputed that the decision to revoke the Plaintiff's PORTPASS access marked the consummation of the agency's decisionmaking process. The Plaintiff, however, fails to satisfy the second prong to obtain judicial review under the APA because the "action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *United States Army Corp. of Engineers v. Hawkes Co*., 578 U.S. 590, 596 (2016) (quoting *Bennett*, 520 U.S. at 177–78)); National Urban League v. Ross, 977 F.2d 770, 776 (9th Cir. 2020) (relying on *Bennett*, 520 U.S. at 178 (legal consequences, in particular, must be "direct and appreciable.")

Not being able to pass through the (DCL), the express-lane, at the DeConcini Port of Entry does not preclude the Plaintiff's entry into the United States or his entering at the DeConcini Port of Entry. There are simply no rights or obligations, or legal consequences flowing from this agency action. *See Parsons v. United States Dep't of Justice*, 878 F.3d 162, 167–68 (6th Cir. 2017) (relying on see *Berry v. United States Dept. of Labor*, 832 F.3d 627, 633 (6th Cir. 2016) (challenging Department of Labor's (DOL) refusal to reopen claim for workers' compensation benefits under Energy Employees Occupational Illness Compensation Program Act (EEOICPA) based on new evidence as final decision; DOL's decision had a sufficiently direct and immediate impact on petitioner and caused legal consequences because it determined his ineligibility for compensation) (relying on *Abbott Labs.*, 387 U.S. at 152) (agency action "must have a 'sufficiently direct and immediate' impact on the aggrieved party and a 'direct effect on [its] day-to-day business.'")

For example, agency actions that expose an individual to criminal or civil liability cause legal consequences. *See, e.g., Sackett v. Envtl. Prot. Agency*, 566 U.S. 120, 126 (2012) (finding that legal consequences flowed from the issuance of an EPA order because it exposed appellants to double penalties in future enforcement proceedings and severely limited their ability to obtain a fill permit); *Louisiana v. U.S. Army Corps of Engr'rs*, 834 F.3d 574, 583 (5th Cir. 2016) ("Judicially reviewable agency actions normally affect a regulated party's possible legal liability; these consequences tend to expose parties to civil or criminal liability for non-compliance with the agency's view of the law or offer a shelter

from liability if the regulated party complies." (citations omitted)). *See also Flue-Cured Tobacco Coop. Stabilization Corp. v. U.S. Envtl. Prot. Agency*, 313 F.3d 852, 860 (4th Cir. 2002) (harms caused by agency decisions are not legal consequences if they "stem from independent actions taken by third parties."); *Jama v. Dept. of Homeland Security*, 760 F.3d 490, 496 (6th Cir. 2016) ("An agency action is not final if it 'does not of itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action.'" (quoting *Rochester Tel. Corp. v. United States*, 307 U.S. 125, 130, (1939)).

The worst direct and appreciable impact on the aggrieved party, the Plaintiff, from the revocation decision is that his border crossings at the DeConcini Port of Entry are slower without the SENTRI pass for 90 days. Thereafter, he may reapply, without prejudice from the prior revocation at issue here. The decision to revoke the Plaintiff's eligibility for the PORTPASS access program is simply not the type of final agency action subject to review under the APA. *Compare Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. at 1906 (finding review under APA, reasoning DACA is not simply a passive non-enforcement policy because it created a program for conferring affirmative immigration relief; creation of that program—and its rescission—is an "action [that] provides a focus for judicial review.")

Even if the decision to revoke Plaintiff's PORTPASS access was a final decision as defined under the APA, with the attendant presumption of reviewability, the Court finds the presumption is rebutted by the statute and regulation which commit the action of revoking PORTPASS access to the Defendant agency's discretion. The Court applies this exception to reviewability narrowly, *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. at 1905, but nevertheless finds that this is one of those rare "administrative decision[s] traditionally left to agency discretion," *Id.*(quoting *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993)).

In *Virgil,* the Court referenced *Webster v. Doe*, 486 U.S. 592, 599–601 (1988), where it held that the APA § 701(a)(2) precluded judicial review of a decision by the

1   Director of Central Intelligence to terminate an employee in the interests of national

2   security, an area of executive action "'in which courts have long been hesitant to intrude.'"

3   *Virgil*, 508 U.S. at 192 (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 819 (1992)

4   (STEVENS, J., concurring in part and concurring in judgment).

5        There is a presumption of non-reviewability of decisions by an agency to not

6   undertake enforcement actions. *Heckler v. Chaney*, 470 U.S. 821, 831–832 (1985) (prison

7   inmates' action to compel Food and Drug Administration to take enforcement action under

8   the Federal Food, Drug, and Cosmetic Act with respect to drugs used for lethal injections

9   to carry out the death penalty failed under the APA because such enforcement decisions

10  have been traditionally "committed to agency discretion.") *Cf. Gonzalez v. United States*,

11  814 F.3d 1022, 1032–33 (9th Cir. 2016) (explaining discretionary function exception for

12  tort liability based on Federal Tort Claims Act waiver of sovereign immunity due to policy

13  judgments that are at the core of the executive branch; law enforcement officers must

14  consider the reliability of information, the relative importance of the crime, and the

15  agency's mission and resources).

16       The decision at issue here, whether Plaintiff's eligibility for PORTPASS access

17  should be revoked, requires "a complicated balancing of a number of factors which are

18  peculiarly within Defendant's expertise," such as where its PORTPASS program

19  "resources are best spent"; whether by revoking the Plaintiff's PORTPASS it "is likely to

20  succeed" in fulfilling its statutory mandate, and whether revoking the Plaintiff's

21  PORTPASS "best fits the agency's overall policies," and, "indeed, whether the agency has

22  enough resources" to retain Plaintiff in the PORTPASS program "at all." *See Heckler*, 470

23  U.S. at 831-32 (describing these type of variables and finding "agency is far better

24  equipped than the courts to deal with . . . in the proper ordering of its priorities.")

25       In *Franklin,* Justice Steven's concurrence compared *Webster's* challenge to the CIA

26  Director's termination of an employee for national security reasons with Franklin's

27  challenge to an agency action involving the census. In comparing the statutory language,

28  there was no language in the Census Act equivalent to language found in the National

Security Act (NSA), which gave the CIA discretion to act as the Secretary deemed advisable. This language in the NSA indicated that Congress intended the Secretary's own mental processes, rather than other more objective factors, to provide the standard for gauging the Secretary's exercise of discretion." *Franklin,* 505 U.S. at 817.

In this case, Congress expressly provided: "The Secretary of Homeland Security shall develop a plan to accelerate the full implementation of an automated biometric entry and exit data system." 8 U.S.C.A. § 1365b(c)(1). The regulations provide for an application to be denied in the discretion of the district director having jurisdiction over the POE where the applicant requests access, with notice to be given to the applicant but there being no appeal from the denial, and the denial being without prejudice to reapplying for this or any other Service benefit after 90 days. 8 C.F.R. § 235.7(a)(4)(x). Access may be revoked at the discretion of the district director or the chief patrol agent, for those who are otherwise determined by an immigration officer to be ineligible to participate in the PORTPASS program. 8 C.F.R. § 235.7(b).

The PORTPASS program involves both national security and immigration interests and the decision to allow an entrant to the United States to use an express-lane or not involves law enforcement type considerations. The Court finds that both the statute and the regulations reflect that Congress has not circumscribed agency discretion to allocate its resources, including those related to the issuance and revocation of PORTPASS access.

### Standard of Review for Summary Judgment

On summary judgment, the moving party is entitled to judgment as a matter of law if the Court determines that in the record before it there exists "no genuine issue as to any material fact." Fed.R.Civ.P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, but is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-325 (1986). In determining whether to grant summary judgment, the Court views the facts and inferences from these facts in the light most favorable to the non-moving party. *Matsushita Elec. Co. v. Zenith Radio Corp*., 475 U.S.

574, 577 (1986). When cross-motions for summary judgment are at issue, the Court evaluates each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *Comcast of Sacramento I, LLC v. Sacramento Metro. Cable Television Comm'n*, 923 F.3d 1163, 1168 (9th Cir. 2019); *Center for Bio-Ethical Reform Inc. v. Los Angeles Cty. Sheriff Dep't*, 533 F.3d 780, 786 (9th Cir. 2008) ("When presented with cross-motions for summary judgment, we review each motion for summary judgment separately, giving the nonmoving party for each motion the benefit of all reasonable inferences.")

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). A material fact is any factual dispute that might affect the outcome of the case under the governing substantive law. *Id.* at 248. A factual dispute is genuine if the evidence is such that a reasonable jury could resolve the dispute in favor of the non-moving party. *Id.*

The interpretation and construction of statutes and regulations are questions of law, which as a general matter, a court is charged to "decide all relevant questions of law" and "interpret constitutional and statutory provisions. 5 U.S.C. § 706. *Al Otro Lado, Inc. v. Nielsen*, 327 F. Supp. 3d 1284, 1309 (S.D. Cal. 2018). Summary judgment can turn on factual issues or legal questions. "Where a case turns on a mixed question of law and fact and . . . the only disputes relate to the legal significance of undisputed facts, the controversy collapses into a question of law suitable to disposition on summary judgment." *Blue Lake Rancheria v. United States*, 653 F.3d 1112, 1115 (9th Cir. 2011) (quotations omitted); *Campidoglio LLC v. Wells Fargo & Co.*, 870 F.3d 963, 973 (9th Cir. 2017).

The moving party is under no obligation to negate or disprove matters on which the non-moving party bears the burden of proof at trial. *Id.* at 325. Rather, the moving party need only demonstrate that there is an absence of evidence to support the non-moving

party's case. *Id.* If the moving party meets its burden, it then shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed.R.Civ.P. 56(e)). To carry this burden, the party opposing a motion for summary judgment cannot rest upon mere allegations or denials in the pleadings or papers. *Anderson*, 477 U.S. at 252. The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "The mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

This trilogy of 1986 cases opened the door for the district courts to rely on summary judgment to weed out frivolous lawsuits and avoid wasteful trials. *Rand v. Rowland*, 154 F.3d 952, 956 -957 (9th Cir. 1998);10A Charles A Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure, § 2727, at 468 (1998). As explained in *Celotex*: "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The Judge's role on a motion for summary judgment is not to determine the truth of the matter or to weigh the evidence, or determine credibility, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 252. Because the jurisdiction of this Court is a question of law, summary judgment is warranted based on the Court's determination that the determination by Defendant to revoke Plaintiff's PORTPASS access is not subject to judicial review.  There is no genuine material fact at issue for trial.

**Accordingly,**

**IT IS ORDERED** that the Plaintiff's Motion for Summary Judgment (Doc. 27) is DENIED.

**IT IS FURTHER ORDERED** that the Defendants' Motion for Summary Judgment (Doc. 36) is GRANTED.

1    **IT IS FURTHER ORDERED** that the Clerk of the Court shall enter Judgment for

2  Defendant and against Plaintiff and close this case.

3    Dated this 1st day of February, 2022.

Honorable David C. Bury
United States District Judge